CASE NO. 10-6171

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

---

**STATE OF OKLAHOMA, ex. rel.,
W.A. DREW EDMONDSON,
ATTORNEY GENERAL OF OKLAHOMA,
Plaintiff-Appellee,**

**v.**

**BP AMERICA INC., BP CORPORATION
NORTH AMERICA INC., BP PRODUCTS
NORTH AMERICA INC., and BP
AMERICA PRODUCTION COMPANY,
Defendants-Appellants.**

---

# BRIEF OF KANSAS, OHIO, AND 36 OTHER STATES,
# AS AMICI CURIAE
# IN SUPPORT OF APPELLEE STATE OF OKLAHOMA

---

On Appeal from the United States District Court for the Western District of Oklahoma
The Honorable Judge Vicki Miles-LaGrange
D.C. No. CIV-09-945-M

---

STEVE SIX
Attorney General of Kansas

KRISTAFER R. AILSLIEGER
Deputy Solicitor General
*Counsel of Record*
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Phone: (795) 296-2215
Fax: (785) 291-3875
Email:  Kris.Ailslieger@ksag.org

[Additional amici States listed inside front cover]

RICHARD CORDRAY
Attorney General
State of Ohio

LISA MADIGAN
Attorney General
State of Illinois

TROY KING
Attorney General
State of Alabama

GREGORY F. ZOELLER
Attorney General
State of Indiana

DANIEL S. SULLIVAN
Attorney General
State of Alaska

THOMAS MILLER
Attorney General
State of Iowa

TERRY GODDARD
Attorney General
State of Arizona

JACK CONWAY
Attorney General
State of Kentucky

DUSTIN MCDANIEL
Attorney General
State of Arkansas

JAMES D. "BUDDY" CALDWELL
Attorney General
State of Louisiana

EDMUND G. BROWN, JR.
Attorney General
State of California

JANET T. MILLS
Attorney General
State of Maine

JOHN W. SUTHERS
Attorney General
State of Colorado

DOUGLAS F. GANSLER
Attorney General
State of Maryland

JOSEPH R. BIDEN, III
Attorney General
State of Delaware

MARTHA COAKLEY
Attorney General
State of Massachusetts

MARK J. BENNETT
Attorney General
State of Hawaii

MICHAEL A. COX
Attorney General
State of Michigan

LAWRENCE G. WASDEN
Attorney General
State of Idaho

LORI SWANSON
Attorney General
State of Minnesota

JIM HOOD
Attorney General
State of Mississippi

CHRIS KOSTER
Attorney General
State of Missouri

STEVE BULLOCK
Attorney General
State of Montana

JON BRUNING
Attorney General
State of Nebraska

CATHERINE CORTEZ MASTO
Attorney General
State of Nevada

MICHAEL A. DELANEY
Attorney General
State of New Hampshire

PAULA T. DOW
Attorney General
State of New Jersey

GARY KING
Attorney General
State of New Mexico

ROY COOPER
Attorney General
State of North Carolina

THOMAS W. CORBETT, JR.
Attorney General
State of Pennsylvania

PATRICK C. LYNCH
Attorney General
State of Rhode Island

ROBERT E. COOPER, JR.
Attorney General
State of Tennessee

MARK L. SHURTLEFF
Attorney General
State of Utah

WILLIAM H. SORRELL
Attorney General
State of Vermont

ROBERT M. MCKENNA
Attorney General
State of Washington

DARRELL V. MCGRAW, JR.
Attorney General
State of West Virginia

BRUCE SALZBURG
Attorney General
State of Wyoming

# Table of Contents

IDENTITY AND INTEREST OF AMICI CURIAE ................................................. 1

SUMMARY OF ARGUMENT ............................................................................... 2

ARGUMENT ......................................................................................................... 3

    A.    CAFA's "mass action" removal provision does not encompass
a State attorney general's lawsuit under *parens patriae* or
statutory authority to vindicate quasi-sovereign interests .................... 3

    B.    The Oklahoma Attorney General is the real party in interest
because he represents the State's sovereign interest in
maintaining honest markets and in correcting wrongdoers ................. 6

        1.    When determining the real party in interest, courts
should look to the complaint as a whole ................................... 6

        2.    In this case and similar cases, an attorney general is the
real party in interest, and removal provisions under
CAFA are not triggered ........................................................... 10

    C.    Even if unnamed individual consumers are better situated to
pursue certain claims, that is a pleading defect, not a cause for
removal ................................................................................................ 19

    D.    Allowing removal of attorney general enforcement actions
violates CAFA's letter and purpose, tramples on federalism
concerns, and leads to adverse consequences ..................................... 25

        1.   A rule against removal is easier to administer ............................. 25

        2.   State enforcement actions should be decided in state court .......... 25

CONCLUSION ................................................................................................... 28

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a) ...................... 30

CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY
REDACTIONS ................................................................................................... 31

CERTIFICATE OF SERVICE ...............................................................32

## Table of Authorities

*Abrego Abrego v. Dow Chem. Corp.*, 443 F.3d 676 (9th Cir. 2006)...................4, 16

*Alfred L. Snapp & Son v. Puerto Rico, ex rel. Barez*,
    458 U.S. 592 (1982).......................................................................10, 11, 15

*Alabama ex rel. Galanos v. Star Serv. & Petroleum Co.*,
    616 F. Supp. 429 (S.D. Ala. 1985) ...................................................8

*Anderson v. Bayer Corp.*, 610 F.3d 390 (7th Cir. 2010) ........................................24

*Brooks v. Tyger Constr. Co.*, No. C-90-24-D,
    1990 WL 488977 (M.D.N.C. Apr. 30, 1990) ............................................8, 12

*California v. FCC,* 75 F.3d 1350 (9th Cir. 1996) .....................................................11

*California v. Universal Syndications, Inc.*, No. C 09-1186 JF (PVT),
    2009 WL 1689651 (N.D. Cal. June 16, 2009).................................................8

*Castillo v. Cameron County,* 238 F.3d 339 (5th Cir. 2001) ....................................11

*Chesapeake & O. R. Co. v. Cockrell*, 232 U.S. 146 (1914)....................................22

*Cunningham v. BHP Petroleum Gr. Brit. PLC*,
    427 F.3d 1238 (10th Cir. 2005) ....................................................................5

*Delaney v. Cade*, 986 F.2d 387 (10th Cir. 1993)....................................................27

*Dep't of Fair Employment & Hous. v. Corr. Corp. of Am.*, No. CV F 09-1388-
    LJO-DLB, 2009 WL 4730908 (E.D. Cal. Dec 7, 2009) .................................8

*Dodd v. Fawcett Publications, Inc.*, 329 F.2d 82 (10th Cir. 1964) ........................23

*Fajen v. Foundation Reserve Ins. Co., Inc.,* 683 F.2d 331 (10th Cir. 1982)...........15

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1 (1983) .....27, 28

*Harvey v. Blockbuster, Inc.,* 384 F. Supp. 2d 749 (D.N.J. 2005) ............................18

*Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010) ..........................................................25

*Hood ex. rel. Miss. v. Microsoft Corp.*,
428 F. Supp. 2d 537 (S.D. Miss. 2006) ........................................................8

*Illinois v. SDS West Corp.* 640 F. Supp. 2d 1047 (C.D. Ill. 2009) .....................8, 26

*In re Ayers*, 123 U.S. 443 (1887) ...............................................................................7

*In re New York*, 256 U.S. 490 (1921) .........................................................................7

*Kansas ex rel. Stephan v. Brotherhood Bank & Trust Co*.,
649 P.2d 419 (Kan. App. 2d 1982).................................................9, 13, 15, 22

*Kansas ex. rel. Stovall v. Home Cable Inc.*,
35 F. Supp. 2d 783 (D. Kan. 1998) ...............................................................7

*Kentucky v. Marathon Petroleum Co.*, No. 3:07-CV-00030-KKC,
2007 WL 2900461 (E.D. Ky. Oct. 3, 2007) ..................................................8

*Kitazado v. Black Diamond Hospitality Invs., LLC*, No. 09-00271,
2009 WL 3209298 (D. Haw. Oct. 6, 2009) ..................................................14

*Knapp v. Railroad Co.*, 87 U.S. 117 (1874) ............................................................22

*Kokkenen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ........................16

*Laughlin v. Kmart Corp.*, 50 F.3d 871 (10th Cir. 1995).........................................24

*Little v. Giles*, 118 U.S. 596 (1886) ........................................................................22

*Lincoln Prop. Co. v. Roche*, 546 U.S. 81 (2005) .....................................5, 21, 22, 24

*Louisiana ex rel. Caldwell v. Allstate Ins. Co.*,
536 F.3d 418 (5th Cir. 2008) ..........................................5, 10, 19, 20, 21, 23

*Maine v. Data Gen. Corp.*, 697 F. Supp. 23 (D. Me. 1988) ...............................8, 11

*Martin v. Franklin Capital Corp.*, 251 F.3d 1284 (10th Cir. 2001) .......................16

*Miedema v. Maytag Corp.*, 450 F.3d 1332 (11th Cir. 2006) ...................................16

*Missouri ex rel. Koster v. Am. Suzuki Motor Corp.*, No. 09-00519-CV-W-FJG,
    2009 WL 3228778 (W.D. Mo. Sept. 30, 2009)..............................................26

*Missouri ex rel. Koster v. Portfolio Recovery Assocs.*,
    686 F. Supp. 2d 942 (E.D. Mo. 2010) ........................................16, 23, 24, 26

*Missouri ex rel. Webster v. Freedom Fin. Corp.*,
    727 F. Supp. 1313 (W.D. Mo. 1989)........................................................8, 11

*Moor v. Alameda County*, 411 U.S. 693 (1973) ........................................................4

*Mormon Church v. United States,* 136 U.S. 1 (1890).........................................10, 11

*Navarro Sav. Ass'n v. Lee*, 446 U.S. 458 (1980)......................................5, 7, 22, 23

*New York ex rel. Abrams v. General Motors Corp.*,
    547 F. Supp. 703 (S.D.N.Y. 1982) ..................................................................7

*New York ex. rel. Cuomo v. Charles Schwab & Co.*, No. 09 Civ. 7709(LMM),
    2010 WL 286629 (S.D.N.Y. Jan. 19, 2010) ................................................8, 9

*People ex rel. Hartigan v. Lann*, 587 N.E.2d 521 (Ill. App. 1992) ........................13

*Pino v. United States*, 507 F.3d 1233 (10th Cir. 2007) ..........................................27

*Postal Tel. Cable Co. v. Alabama*, 155 U.S. 482 (1894)..........................................4

*Powerex Corp. v. Reliant Energy Servs.*, 551 U.S. 224 (2007)..............................24

*Rhode Island v. Lead Indus. Ass'n*, 951 A.2d 428 (R.I. 2008) ...............................27

*Shamrock Oil & Gas Co. v. Sheets*, 313 U.S. 100 (1941) .......................................16

*State ex rel. Nixon v. American Tobacco Co.*,
    34 S.W.3d 122 (Mo. 2000) ...........................................................................13

*State ex rel. Webster v. Best Buy Co., Inc.*,
    715 F. Supp. 1455 (E.D. Mo. 1989) ................................................................9

*Tanoh v. Dow Chem. Co.*, 561 F.3d 945 (9th Cir. 2009) ...................................14, 24

*Texas Office of Pub. Util. Control v. FCC*,
    183 F.3d 393 (5th Cir. 1999) ......................................................................11

*Virginia v. Supportkids Servs., Inc.*, No. 3:10-CV-73,
    2010 WL 1381420 (E.D. Va. Mar. 30, 2010)................................................8

*West Virginia v. Morgan Stanley & Co.*,
    747 F. Supp. 332 (S.D.W. Va. 1990) ..........................................................8

*West Virginia ex rel. McGraw v. Comcast Corp.*, No. 09-4671,
    2010 WL 1257639 (E.D. Pa. Mar. 31, 2010) ....................................5, 10, 20

*Wisconsin v. Abbott Labs.*, 341 F. Supp. 2d 1057 (W.D. Wis. 2004) ..................8, 9

## Statutes

28 U.S.C. § 1332(a) ...........................................................................................3

28 U.S.C. § 1332(d)(2)....................................................................................3, 4

28 U.S.C. § 1332(d)(11)(A) ..............................................................................4

28 U.S.C. § 1332(d)(11)(B)(i) ........................................................................3, 4

## Other

16 Moore's Federal Practice § 107.14[2][c] (3d ed. 2005) ...............................22, 24

151 Cong.Rec. S1157-02 (Feb. 9, 2005) .........................................................17, 18

S. Rep. No. 109-14 (2005) ...............................................................................17

## IDENTITY AND INTEREST OF AMICI CURIAE

The States of Kansas, Ohio, and 36 other states, through their attorneys general, file this amici curiae brief in support of Appellee State of Oklahoma.  The amici States' attorneys general, as the chief law enforcement officers of their States, routinely protect their States' interests by enforcing myriad state laws, including consumer protection and antitrust laws.  In doing so, State attorneys general often rely on common-law *parens patriae* authority as well as statutory authorization, much of which codifies and expands traditional *parens patriae* authority.

State attorneys general often file such cases in state courts, typically invoking multiple legal theories and seeking several forms of relief, including disgorgement of ill-gotten gains and recovery of losses for victims.  The States have a strong interest in continuing to pursue such state law cases in state courts, without removal to federal court under the Class Action Fairness Act of 2005 ("CAFA").

Beyond the CAFA removal context, the States have a broad interest in maintaining the distinction between lawsuits brought by sovereign States and those brought by individuals.  The States submit this brief to protect their sovereignty.

## SUMMARY OF ARGUMENT

CAFA's "mass action" provision—which allows defendants to remove certain "mass actions" from state court to federal court—does not extend to suits brought by State attorneys general, under *parens patriae* authority or statutory power, to protect State sovereign or quasi-sovereign interests. Although federal courts may look beyond a pleading's caption to determine the "real party in interest" in a case, the State *is* the real party in interest in *parens patriae* cases or statutorily authorized lawsuits such as the Oklahoma consumer protection suit here. The complaint taken as a whole shows that this case vindicates State quasi-sovereign interests in maintaining an honest market. Thus, an attorney general suit such as this does not fall within CAFA's "mass action" definition and fails to satisfy the minimal diversity needed for removal.

Further, even if private individuals should be the real parties, and should be joined to a suit, that raises only a defective pleading issue to be addressed in state court. It does not support CAFA removal. Those claims are vulnerable to dismissal in state court, under state law, rather than removal of the entire action. At this stage, a federal court may neither order those parties added nor treat the complaint *as if* those parties are present, and thereby justify removal.

Finally, allowing CAFA removal here, and in the broad category of similar State actions, would be inconsistent with CAFA's purposes as well as its plain

2

language and would lead to unintended consequences.  CAFA was meant to address mass actions involving multiple parties, not enforcement actions brought solely by State attorneys general.  Allowing removal would transfer to federal courthouses a host of cases by sovereign States that belong in state court.

## ARGUMENT

**A.    CAFA's "mass action" removal provision does not encompass a State attorney general's lawsuit under *parens patriae* or statutory authority to vindicate quasi-sovereign interests.**

CAFA was enacted to allow more cases, including class actions and cases considered similar to class actions, to be removed from state court to federal court. However, Oklahoma's action, or any other case brought by a sovereign State as a sole plaintiff, is not removable.

Under CAFA, a removable "mass action" is defined, subject to several exceptions, as a civil action "in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional requirements under subsection (a)."[1]   28 U.S.C. § 1332(d)(11)(B)(i).  Such an action is "deemed to be a class action removable under paragraphs (2) through (10)

---

[1] 28 U.S.C. § 1332(a) grants jurisdiction where the matter in controversy exceeds $75,000, and where the parties include citizens of different States or foreign countries.

if it otherwise meets the provisions of those paragraphs."   28 U.S.C. § 1332(d)(11)(A).

This case does not trigger CAFA's mass action provision, nor does it even meet minimal diversity, because the Oklahoma Attorney General is the sole named plaintiff. 28 U.S.C. §§ 1332(d)(2), (d)(11)(B)(i). Obviously, the Attorney General is not 100 persons, and States are not citizens for diversity jurisdiction purposes, See, e.g., *Moor v. Alameda County*, 411 U.S. 693, 717 (1973); *Postal Tel. Cable Co. v. Alabama*, 155 U.S. 482, 487 (1894).

CAFA removal was raised by Defendant-Appellants, several BP entities ("BP"), based on their insistence that the Attorney General is not the "real party in interest": rather, the Oklahoma customers who paid inflated prices for propane are the "real parties."   BP claims if those customers are the "real parties," CAFA's minimal diversity and 100-persons requirements are met.[2]

_____

[2] Because the district court held that the diversity and 100-person requirements were not met, it did not address the jurisdictional amount in controversy requirement.   See 28 U.S.C. § 1332(d)(11)(B)(i) (stating that mass action jurisdiction "shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a)").   While no factfinding has occurred on this issue, it seems highly unlikely that any individual consumer of propane suffered over $75,000 in damages.   This would preclude federal jurisdiction even if the Court were to otherwise agree with BP.   See *Abrego Abrego v. Dow Chem. Co*, 443 F.3d 676, 689 (9th Cir. 2006) ("Although . . . we do not decide whether this case could go forward if only one or a few plaintiffs are within the category over whom "jurisdiction shall exist," we do conclude -- as should be obvious -- that the case cannot go forward unless there is at least one plaintiff whose claims can remain in federal court.")

This "real party" analysis is not new to CAFA, as it has developed over years as part of the diversity jurisdiction inquiry.  In resolving diversity questions generally, the Supreme Court has long held that "the 'citizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy.  Thus, a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980) (citations omitted); *see also Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 91 (2005); *Cunningham v. BHP Petroleum Gr. Brit. PLC*, 427 F.3d 1238, 1244 (10th Cir. 2005) (noting citizenship of the "real party in interest . . . was determinative for purposes of jurisdiction").

Some courts have applied this "real party" analysis to the CAFA context, particularly in reviewing enforcement actions by attorneys general, to decide whether such cases should be characterized as brought on behalf of private individuals.  See *Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418 (5th Cir. 2008); *West Virginia ex rel. McGraw v. Comcast Corp.*, No. 09-4671, 2010 WL 1257639, at *6-7 (E.D. Pa. Mar. 31, 2010).  Thus, BP urges the Court to treat individual consumers as the "real parties" and to find removal justified on that basis.

But a real party in interest analysis does not justify CAFA removal here, for several reasons.  First, as Part B explains, the real party *is* the Oklahoma Attorney

General, not any individuals.  Second, as Part C explains, even if the consumers are the real parties that should pursue the claims at issue, that is a pleading defect to be addressed in state court; it is not a warrant to rewrite the complaint and then remove the case.  Finally, as Part D explains, allowing removal would violate CAFA's letter and intent as well as principles of federalism by improperly transferring a host of state law cases to federal courts.

**B.    The Oklahoma Attorney General is the real party in interest because he represents the State's sovereign interest in maintaining honest markets and in correcting wrongdoers.**

The Oklahoma Attorney General has asserted a broad enforcement action on behalf of Oklahoma's interest in securing an honest marketplace in which all its citizens participate.  The complaint includes two claims under the Oklahoma Consumer Protection Act ("OCPA") and one claim for common law unjust enrichment pursuant to the Attorney General's *parens patriae* authority.  All three claims are based on BP's manipulation of the propane gas market in Oklahoma.  The Attorney General seeks relief in the form of an injunction, civil penalties, disgorgement of unlawfully acquired funds or restitution, costs and fees, and the revocation of BP's business licenses.

**1.    When determining the real party in interest, courts should look to the complaint as a whole.**

In similar cases, courts have consistently looked to the complaint as a whole and concluded that the State was the real party in interest.

The Supreme Court has noted a "rough symmetry between the real party in interest standard of Rule 17(a) and the rule that diversity jurisdiction depends upon the citizenship of real parties to the controversy." *Navarro Sav. Ass'n*, 446 U.S. at 462 n. 9 (internal quotations omitted).  In determining if a named party is a real party in interest or simply a nominal party, courts have looked at "the essential nature and effect of the proceeding, as it appears from the entire record." *In re New York*, 256 U.S. 490, 500 (1921); see also *In re Ayers*, 123 U.S. 443, 492 (1887) (instructing courts to "consider the nature of the case as presented on the whole record").

The same rule applies when a State is the named plaintiff.  Courts look to a State's interest in an action as a whole to determine whether the State is a real party in interest.  See, e.g., *Kansas ex. rel. Stovall v. Home Cable Inc.*, 35 F. Supp. 2d 783, 785-86 (D. Kan. 1998) ("The fact that one of the remedies sought by the State of Kansas is restitution to the allegedly aggrieved Kansas consumers does not transform the State of Kansas into a 'citizen' for purposes of establishing diversity jurisdiction."); *New York ex rel. Abrams v. General Motors Corp.*, 547 F. Supp. 703, 706-07 (S.D.N.Y. 1982) (concluding that State's status as the real party in interest is "not altered by the State's decision to seek restitutionary relief and damages" because "[r]ecovery of damages for aggrieved consumers is but one

7

aspect of the case").[3]  Also, when a State is the named plaintiff, considerations of comity and federalism further weigh against removal.

Courts routinely recognize that a State is the real party in interest when a State attorney general brings an enforcement action seeking broad relief, some of which indisputably benefits the State and its citizens.  Courts review the entire case in that assessment.  See, e.g., *Illinois v. SDS West Corp.*  640 F. Supp. 2d 1047, 1052 (C.D. Ill. 2009) (noting that most courts "have looked at the essential nature and effect of the complaint as a whole, rather than divvying up the complaint by the relief sought") (citations omitted).  A monetary relief claim, especially when one of many remedies sought, does not diminish the State's status as the real party

---

[3]  District courts in most circuits have applied this rule.  1st Cir.: *Maine v. Data Gen. Corp.*, 697 F. Supp. 23, 25 (D. Me. 1988); 2d Cir.: *New York ex. rel. Cuomo v. Charles Schwab & Co.*, No. 09 Civ. 7709(LMM), 2010 WL 286629, at *5-6 (S.D.N.Y. Jan. 19, 2010); 4th Cir.: *Virginia v. Supportkids Servs., Inc.*, No. 3:10-CV-73, 2010 WL 1381420, at *4 (E.D. Va. Mar. 30, 2010); *West Virginia v. Morgan Stanley & Co.*, 747 F. Supp. 332, 339 (S.D.W. Va. 1990); *Brooks v. Tyger Constr. Co.*, No. C-90-24-D, 1990 WL 488977, at *2 (M.D.N.C. Apr. 30, 1990); 5th Cir.: *Hood ex. rel. Miss. v. Microsoft Corp.*, 428 F. Supp. 2d 537, 546 (S.D. Miss. 2006); 6th Cir: *Kentucky v. Marathon Petroleum Co.*, No. 3:07-CV-00030-KKC, 2007 WL 2900461, at *4 (E.D. Ky. Oct. 3, 2007); 7th Cir.: *Illinois v. SDS West Corp.*  640 F. Supp. 2d 1047, 1052 (C.D. Ill. 2009); *Wisconsin v. Abbott Labs.*, 341 F. Supp. 2d 1057, 1062 (W.D. Wis. 2004); 8th Cir.: *Missouri ex rel. Webster v. Freedom Fin. Corp.*, 727 F. Supp. 1313, 1317 (W.D. Mo. 1989); 9th Cir.: *Dep't of Fair Employment & Hous. v. Corr. Corp. of Am.*, No. CV F 09-1388 LJO DLB, 2009 WL 4730908, at *3 (E.D. Cal. Dec. 7, 2009); *California v. Universal Syndications, Inc.*, No. C 09-1186 JF (PVT), 2009 WL 1689651, at *5 (N.D. Cal. June 16, 2009); 11th Cir.: *Alabama ex rel. Galanos v. Star Serv. & Petroleum Co.*, 616 F. Supp. 429, 431 (S.D. Ala. 1985).

in interest or render the State a nominal party.  See *Charles Schwab & Co.*, 2010 WL 286629, at *5-6 (discouraging courts from attempting to separate injunctive relief from restitution to victims, stating  "[i]t is completely understandable that a state should, at the same time, seek to prevent the recurrence of harmful conduct in the future and to remedy the damage it has caused in the past"); *Abbott Labs.*, 341 F. Supp. 2d at 1062 ("Defendants are correct that plaintiff appears to be wearing two hats by requesting relief for itself and for private parties, but that fact does not require this court to break the complaint apart along those lines for purposes of determining the real party in interest."); *Kansas ex rel. Stephan v. Brotherhood Bank & Trust Co*., 649 P.2d 419, 423 (Kan. App. 1982) (State was real party, despite seeking restitution for single victim; "the availability of various remedies, one of which would recompense an aggrieved consumer, does not necessarily diminish the authority or interest of the state in prosecuting the action"); *State ex rel. Webster v. Best Buy Co., Inc.*, 715 F. Supp. 1455 (E.D. Mo. 1989) (concluding that primary purpose of enforcement actions is to accomplish statute's purposes and that "recovery of damages for aggrieved consumers [was] but one aspect of the case").

While most courts have employed a holistic approach to real party analysis generally, others have mistakenly adopted a claim-by-claim approach in the context of CAFA-based removals of attorney general enforcement actions.  See

*Allstate Ins. Co.*, 536 F.3d at 430 ("If Louisiana were only seeking [an injunction], which is clearly on behalf of the State, its argument that it is the only real party in interest would be much more compelling."); *Comcast Corp.*, 2010 WL 1257639, at *5-6 (same).  This is incorrect for several reasons.  First, it conflicts with real party jurisprudence as discussed above.  Second, consistency with pre-CAFA real party jurisprudence makes more sense than a novel approach that CAFA does not mandate.  Finally, it hinders States' enforcement efforts, as attorneys general might feel pressed to trim their sails in constructing complaints, deleting valid claims for fear of CAFA removal in a case where public-protection concerns favor state-court resolution.

> **2.     In this case and similar cases, an attorney general is the real party in interest, and removal provisions under CAFA are not triggered.**

Oklahoma is the real party in interest here, and removal is improper, whether viewing the complaint as a whole—as the Court should do—or viewing the claims separately.   A State's *parens patriae* interest, regardless of common law or statutory basis, exceeds the interests of individuals seeking monetary relief.

The United States Supreme Court has described the "prerogative of parens patriae" as "inherent in the supreme power of every state," and it is "often necessary to be exercised in the interest of humanity, and for the prevention of injury to those who cannot protect themselves." *Alfred L. Snapp & Son v. Puerto*

*Rico, ex rel. Barez*, 458 U.S. 592, 600 (1982) (quoting *Mormon Church v. United States,* 136 U.S. 1, 57 (1890)).  In *Snapp,* the Supreme Court confirmed a State's standing to sue as *parens patriae* to protect its sovereign and quasi-sovereign interests, which include the fundamental interest in "the power to create and enforce a legal code," 458 U.S. at 601, and interest in the "health and well-being— both physical and economic—of its residents in general," *id.* at 607.  See also *Data Gen. Corp.*, 697 F. Supp. at 25 (explaining the state is a real party in interest, not a nominal party, "if it has quasi-sovereign interest beyond the interests of a few particular private parties").

Here, Oklahoma's action is authorized by its state code—specifically, the Oklahoma Consumer Protection Act—so it falls squarely under the State's interest in "creat[ing] and enforc[ing] a legal code."  *Snapp,* 458 U.S. at 601.  See also *Castillo v. Cameron County,* 238 F.3d 339, 351 (5th Cir. 2001) (a "state has a sovereign interest in enforcing its own laws"); *California v. FCC,* 75 F.3d 1350, 1361 (9th Cir. 1996) (noting that a state has "its own sovereign interest in law enforcement"); *Texas Office of Pub. Util. Control v. FCC,* 183 F.3d 393, 449 (5th Cir. 1999) (citing *Snapp* and noting that "states have a sovereign interest in 'the power to create and enforce a legal code'").

Moreover, a State's interest in maintaining an honest market, such as Oklahoma's interest in its propane market, is a classic quasi-sovereign interest.

11

See, e.g., *Freedom Fin. Corp.*, 727 F. Supp. at 1317 ("[A] state's goal of securing an honest marketplace in which to transact business is a quasi-sovereign interest."); see also *Tyger Constr.*, 1990 WL 488977, at *2 (holding that North Carolina's interest in workplace conditions made it the real party in interest when protecting one employee against retaliatory discharge for invoking OSHA rights, because such protection "would indirectly benefit all workers in North Carolina by sending a clear message that workplace safety is an important goal of the State"); District Court Order at 3-4 (Doc. 53) ("[The OCPA] provides enforcement mechanisms, not available to any particular citizen of Oklahoma, which allows the State to vindicate public interests in its quasi sovereign capacity.  This makes the State more than a nominal party to this action.").

The relief sought here, which mirrors relief sought in many antitrust or consumer protection cases, further demonstrates that Oklahoma is protecting broad public interests.  The Oklahoma Attorney General seeks injunctive relief to control BP's future behavior, and even seeks to cancel BP's licenses to do business in Oklahoma.  Such relief protects unknown future consumers and the market as a whole, rather than only a few discrete consumers.

In seeking recovery of BP's wrongfully obtained revenue, Oklahoma ensures an honest market both by denying BP ill-gotten gains, as an end in itself, and by discouraging other companies from misbehavior.  As a result, the entire

Oklahoman citizenry will benefit. Further, it is commonplace for States to seek to recover funds in consumer protection cases. Because consumer laws govern private transactions, it only makes sense that undoing or punishing wrongful transactions involves recovering the money involved. See, e.g., *Kansas ex rel. Stephan*, 649 P.2d at 423.

Treating an attorney general's action as primarily one "on behalf of" individual plaintiffs violates the fundamental principle behind all attorney general actions. Such actions seek to vindicate broad public interests, not merely narrow private interests. See, e.g., *People ex rel. Hartigan v. Lann*, 587 N.E.2d 521, 524 (Ill. App. 1992) (attorney general's suit was "essentially a law enforcement action designed to protect the public, not to benefit private parties" even though attorney general was authorized by statute to collect monetary relief). Indeed, typically attorneys general do not represent individual consumers as their personal attorney. *Id.* (attorney general not required to respond to discovery on behalf of any consumer for whom restitution was sought). Nor may individuals typically intervene in an attorney general's enforcement action. *State ex rel. Nixon v. American Tobacco Co*., 34 S.W.3d 122, 127-31 (Mo. 2000) (denying intervention in attorney general's suit despite consumers' claims that they were intended beneficiaries of prayer for restitution under Missouri's consumer protection act).

The opposing approach seeks to force attorneys general to represent the

interests of private citizens as part of a CAFA mass action, despite having chosen a different approach. But "plaintiffs in a mass action, unlike in a class action, do not seek to represent the interests of parties not before the court." *Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 952 (9th Cir. 2009); *Kitazado v. Black Diamond Hospitality Invs., LLC*, No. 09-00271, 2009 WL 3209298, at *6 (D. Haw. Oct. 6, 2009) (stating that "mass actions simply concern the direct claims of individual plaintiffs without regard to any 'putative plaintiff class,' as is typical in a class action").

Oklahoma's sovereign interests are not undercut by the mere fact that some, but not all, Oklahomans purchased propane in the relevant periods, or by the number of such purchasers. BP insists that this case serves only the private interests of a "small subset of Oklahoma propane purchasers," (BP Br. at 29), and that an otherwise valid *parens patriae* case forfeits sovereign characterization when only a "small subset" of citizens are involved in the market that the State seeks to police.

However, the "small subset" approach would lead to removal of virtually *all* State enforcement actions, because virtually *all* antitrust and consumer protection cases involve a "subset" of citizens. No product is used by literally *every* citizen. Even common products such as gasoline or milk are not used by non-drivers or the lactose-intolerant, respectively. Surely a case that protects most citizens qualifies

as protecting the recognized quasi-sovereign interest in the "health and well-being—both physical and economic—of [a State's] residents in general." *Snapp*, 458 U.S. at 607.  Nothing in CAFA, or any other doctrine, justifies a slippery-slope line-drawing based on whether the market protected serves 90% of citizens, or merely 5%.  "Whether one consumer, ten or one hundred consumers, may receive actual damages as a result of a suit by the attorney general does not diminish the overall benefit to the state's interest in protecting consumers against deceptive and unconscionable acts and practices." *Kansas ex rel. Stephan*, 649 P.2d at 423.

When a State protects the integrity of a market, it protects all product buyers. And when a State punishes a wrongdoer, it is also vindicating the interests of all those unidentified would-be purchasers who did *not* buy a product because of an inflated price or a deceptive marketing practice.  Thus, counting beneficiaries' noses does not work.  Instead, whenever a State protects enforcement interests that extend beyond a few citizens, it is acting as *parens patriae* and is a real party in interest.

Any doubts on this score may also be resolved by considering the presumptions against federal jurisdiction in unclear cases, and the more specific presumption against removal.  See, e.g., *Fajen v. Foundation Reserve Ins. Co., Inc.,* 683 F.2d 331, 333 (10th Cir. 1982) (doubts about propriety of removal are resolved in favor of remand).  Moreover, a presumption against removal comports

with the broader principle that "federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Indeed, courts traditionally have construed removal statutes narrowly to effect Congress's intent to limit federal jurisdiction and preserve the independence of state governments.  *Shamrock Oil & Gas Co. v. Sheets*, 313 U.S. 100, 108-09 (1941); see also *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1289 (10th Cir. 2001) (stating that "courts must rigorously enforce Congress' intent to restrict federal [diversity] jurisdiction").  That presumption against removal means that any doubts should be resolved in favor of remand.  *Shamrock Oil,* 313 U.S. at 108-09; *Martin,* 251 F.3d at 1289.

While CAFA was designed to expand diversity jurisdiction in class action cases, that expansion should be limited to the statute's precise terms, which is why most courts continue to apply the presumption against removal under CAFA.  See *Abrego Abrego v. Dow Chem. Corp.*, 443 F.3d 676, 685 (9th Cir. 2006); *Miedema v. Maytag Corp.*, 450 F.3d 1332, 1328-29 (11th Cir. 2006); see also *Missouri ex rel. Koster v. Portfolio Recovery Assocs.*, 686 F. Supp. 2d 942, 945 (E.D. Mo. 2010) (criticizing *Allstate Ins. Co.* for interpreting "CAFA broadly").

Equally important is the absence in CAFA of Congressional intent to remove State enforcement actions.  Nothing in the statutory language or legislative history supports the idea that attorney general actions should be routinely removed.  The

16

mass action provision was aimed at multiple-party cases, with the goal of treating them like representative class actions, as opposed to sole-plaintiff cases.   For example, the Senate Committee Report for CAFA refers to "mass actions" as "suits that are brought on behalf of *numerous named plaintiffs* who claim that their suits present common questions of law or fact that should be tried together even though they do not seek class certification status."   S. Rep. No. 109-14 (2005) (emphasis added).

In addition, the legislative history shows a common understanding that attorney general actions would *not* be subject to removal.   At one point, a clarifying amendment was proposed expressly to exclude attorney general *parens patriae* claims from CAFA's reach.   As the senators speaking against the amendment explained, the amendment was unnecessary because CAFA's scope already excluded such actions:

> State attorneys general have authority under the laws of every State to bring enforcement actions to protect their citizens.  Sometimes these laws are parens patriae cases, similar to class actions in the sense that the State attorney general represents the people of that State.  In other instances, their actions are brought directly on behalf of that particular State.  But they are not class actions; rather, they are very unique attorney general lawsuits authorized under State constitutions or under statutes.
>
> One reason this amendment is not necessary is because our bill will not affect those lawsuits.

151 Cong.Rec. S1157-02, at S1163 (Feb. 9, 2005) (statement of Sen. Grassley).

Senator Hatch, the Chairman of the Committee on the Judiciary, agreed:

> [T]his amendment, which excludes from the scope of this legislation any "civil action brought by or on behalf of, the Attorney General of any State," is unnecessary . . . .
>
> State attorneys general have authority under the laws of every State in this country to bring enforcement actions to protect their citizens. These suits, known commonly as *parens patriae* cases, are similar to class actions to the extent that the attorney general represents a large group of people.
>
> But let me be perfectly clear that they are not class actions.
>
> . . .
>
> . . . [T]he bill applies only to class actions, and not *parens patriae* actions.

*Id.* at S1163-64 (statement of Sen. Hatch); see also *id.* at S1162 (this bill "will not in any way impede" an attorney general's ability to sue on behalf of his State's citizens) (statement of Sen. Cornyn); *Harvey v. Blockbuster, Inc.,* 384 F. Supp. 2d 749, 753-54 (D.N.J. 2005) (concluding that defeat of the attorney general amendment does not indicate intent that such suits be removable under CAFA).

In sum, nothing about CAFA indicates an intent to allow removal of attorney general enforcement actions.  Such actions represent the state's interests, not those of other parties.

**C.   Even if unnamed individual consumers are better situated to pursue certain claims, that is a pleading defect, not a cause for removal.**

While Oklahoma, not the individual consumers, is the real party in interest here, removal under CAFA would be improper *even if* this Court were to conclude that individual consumers are better situated to bring certain claims—or even if the individuals are the *only* parties able to pursue such claims.  This is because parties *not* present cannot trigger CAFA requirements, and a conclusion that they *should* be present does not make it so.  If the Attorney General cannot bring "their" claims in a *parens patriae* capacity, then his attempt to do so should be rejected by dismissing any claims that he cannot bring.  If he seeks to cure that pleading defect by teaming up with private plaintiffs, then that amended complaint might be subject to CAFA removal.   But without such an amendment, removal now is improper.

Indeed, the one case authorizing mass action CAFA removal of an attorney general action stated the individuals determined to be the real parties in interest *had to be added* for the case to proceed in federal court.  *Allstate Ins. Co.*, 536 F.3d at 430.  The Fifth Circuit did not explain precisely how the case was to proceed with added parties, and of course the Louisiana Attorney General has no power to force those parties to join.  The district court would need to order such joinder, and

the Fifth Circuit noted it would "leave to the district judge's capable hands the manner by which the individual policyholders are to be added to this action." *Id.*[4]

Judge Southwick correctly dissented on this point. Explaining that the majority's "remedy" was not warranted, Judge Southwick found it unnecessary to even resolve the real party issue. *Allstate Ins. Co.*, 536 F.3d at 434 (Southwick, J., dissenting). In his view, if the affected individuals—certain insurance policyholders—were the real parties in interest, and if the Louisiana Attorney General did not have a true quasi-sovereign interest to qualify as a real party, that would mean only that the pleading was defective, not that it was a mass action subject to CAFA removal. *Id.*

> I find that we cannot force the Attorney General to litigate in the posture of a plaintiff in a mass action or, as the Defendants have argued, as a class representative, in order to confer federal jurisdiction. . . . Instead, relief to which the Attorney General is not entitled can be denied. If treble damages relief requires it, the Attorney General needs to decide whether to make this a class or mass action. Only when and if that decision becomes necessary will the federal court be assured of its jurisdiction. . . .
>
> CAFA's "class action" provision is not meant to confer federal jurisdiction any time the removing party asserts that the plaintiff must act in a representative capacity. Nor is its "mass action" provision meant to confer federal jurisdiction simply because the removing

---

[4] The other case allowing CAFA-based removal of an attorney general action, *Comcast Corp.*, did not raise the joinder issue, because the court there treated the case as a "class action," not a "mass action." 2010 WL 1257639, at *1. In that case, the district court specifically relied on the fact that the West Virginia Antitrust Act had provisions comparable to Rule 23. *Id.* at *9-10.

> party suggests that the best way to cure a defective pleading is to join 100 additional parties.
>
> In summary, even if this suit should be a class action (as the Defendants argue) or a mass action (as the majority concludes), there is no jurisdiction until the suit has indeed been brought under a Rule 23 equivalent or as a mass action in state court

*Id.* at 434-35.  Judge Southwick was right.  Even if the real party analysis comes out against the attorney general—here or in any similar case—the solution is for the attorney general to face the consequences of that defect in state court.  Further, the availability of any certain claim or relief, and whether a private party must bring the claim rather than an attorney general, is a matter of state law.

Moreover, adding parties as a means to manufacture federal jurisdiction is inconsistent with the Supreme Court's guidance in removal cases.  In *Lincoln Property Co.*, the Court explained that courts should assess a case as filed, and let the jurisdictional chips fall where they may, not rewrite the complaint to achieve or defeat federal jurisdiction.  546 U.S. at 93.  In reviewing prior decisions "employing 'real party to the controversy' terminology in describing who counts and who can be discounted for diversity purposes," 546 U.S. at 91, the Court noted these decisions fell into one of two categories: (1) using an "improperly or collusively" named party to create federal jurisdiction, or (2) using such a party to defeat federal jurisdiction.  *Id.* at 91-92 (citations omitted).  If the former category, the appropriate remedy is to dismiss the case for lack of subject matter jurisdiction.

See, e.g., *Little v. Giles*, 118 U.S. 596, 600-07 (1886).  If the latter, the remedy is to disregard the citizenship of the nominal party.  See, e.g., *Chesapeake & O. R. Co. v. Cockrell*, 232 U.S. 146, 152 (1914).

Thus, in *Lincoln Property Co.,* the Court analyzed the real party issue, but did not look beyond the face of the complaint to find additional parties.  See *Lincoln Prop. Co.*, 546 U.S. at 93 (concluding the court had "no warrant to inquire whether some other person might have been joined as an additional or substitute defendant" (citing *Knapp v. Railroad Co.*, 87 U.S. 117 (1874) (federal courts should not "inquir[e] outside of the case in order to ascertain whether some other person may not have an equitable interest in the cause of action"))).  See, e.g., *Kansas ex rel. Stephan,* 649 P.2d at 423 (if named party's interest is real, the fact that other interested parties are not joined "will not affect the jurisdiction of the [federal courts]"); 16 Moore's Federal Practice § 107.14[2][c], at 107-67 (3d ed. 2005) ("Ordinarily, a court will not interfere with the consequences of a plaintiff's selection in naming parties, unless the plaintiff has impermissibly manufactured diversity or used an unacceptable device to defeat diversity.").

In *Navarro Savings Association*, the Supreme Court conducted a real party in interest inquiry.  The purpose, however, was to determine the real party in interest status of the named plaintiffs, not to *add* parties.  The Court held, when a case is brought in a trust's name, the diversity jurisdiction inquiry should be

premised on the citizenship of the trustees, not the citizenship of each shareholder or beneficiary of the trust. 446 U.S. at 465-66.  Notably, the Court started with the fact that the trustees *were* the named parties.  The Court did *not* order other parties to be *added* and then considered.

Indeed, *amici* are not aware of any case, other than *Allstate,* in which a real party analysis led to the forced addition of other parties, with the broadened complaint then used as the basis for a diversity jurisdiction inquiry.[5]  Again, the remedy, if there is a real party problem (and there is not here), is to subject the "defective" pleading to motion practice in state court.  Regardless of the outcome in state court, the remedy is not removal.  See *Portfolio Recovery Assocs.*, 686 F. Supp. 2d at 945 ("This Court agrees with the dissenting opinion [in *Allstate*] that the request for treble damages does not convert the *parens patriae* action into a 'mass action.'  It may be, as Judge Southwick puts it, a matter of defective pleading.").

Moreover, removal of a "rewritten" complaint premised on the *anticipated* addition of other parties violates the rule that removal jurisdiction must be

---

[5] Attorney general enforcement actions are also unlike fraudulent joinder cases, where courts are instructed "pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available."  *Dodd v. Fawcett Publications, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964) (citations omitted).  Such cases focus on discounting improperly joined parties, not on adding improperly omitted parties.  Here, with no other named plaintiffs in this case, no improper joinder is at issue.

premised on a case's status *at the time of removal*.  See *Powerex Corp. v. Reliant Energy Servs.*, 551 U.S. 224, 230 (2007); *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995); see also *Portfolio Recovery Assocs.*, 686 F. Supp. 2d at 946 (criticizing *Allstate Insurance Co.* for "suppos[ing] what the case would need to become in order for treble damages to be awarded" and then directing the district court to add individual policyholders).

In addition, forcibly rewriting a complaint to achieve removal violates the principle, reiterated in *Lincoln Property Co.,* that a plaintiff is the master of the complaint.  546 U.S. at 91 ("In general, the plaintiff is the master of the complaint and has the option of naming only those parties the plaintiff chooses to sue, subject only to the rules of joinder [of] necessary parties." (quoting 16 Moore's Federal Practice §107.14[2][c], at 107-67)).  Two circuit courts have applied this doctrine to CAFA in a slightly different context.  See *Anderson v. Bayer Corp.*, 610 F.3d 390, 393 (7th Cir. 2010) (holding that plaintiffs, as masters of their complaint, could plead around CAFA's mass action requirements and avoid federal jurisdiction by filing multiple lawsuits, each with fewer than 100 named plaintiffs, even though the total number of plaintiffs if combined would exceed 100); *Tanoh.*, 561 F.3d at 945 (same).

In sum, regardless of the real party analysis, removal is not a valid option since the case *as it exists* simply does not meet CAFA's plain terms.

**D.     Allowing removal of attorney general enforcement actions violates CAFA's letter and purpose, tramples on federalism concerns, and leads to adverse consequences.**

**1.     A rule against removal is easier to administer.**

The Supreme Court recently admonished that "administrative simplicity is a major virtue in a jurisdictional statute." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1193 (2010).  The parties in this case have spent the last thirteen months litigating CAFA removal, rather than the case's merits, based on BP's claim-by-claim approach, with a microscopic analysis of who benefits from the Oklahoma Attorney General's action.  Indeed, this Court properly noted the possibility, if it adopts part of BP's view, that this case would require further district court factfinding just to resolve the CAFA issue.  Order at 3 (Doc. 01018467885, Jul. 29, 2010).  All this can be avoided if the Court finds an attorney general's enforcement action is, by its nature, *not* a mass action.

**2.     State enforcement actions should be decided in state court.**

Attorneys general prosecute scores of enforcement actions every year in which a portion of the relief requested is recovery premised on, if not directly for, losses suffered by individual citizens.  Most of these enforcement actions are routine.  Alternatively, attorneys general occasionally pursue innovative state law claims on behalf of their citizens.  In both instances, federalism and comity concerns favor state lawsuits—brought by a state attorney general, to enforce state

common or statutory law—be decided in state court.

Several district courts have recently reviewed remand requests in routine attorney general actions.  In one such suit, the Missouri Attorney General sought injunctions, full restitution to all consumers sustaining economic loss, and civil penalties from the American Suzuki Motor Corporation for alleged violations of the Missouri Merchandising Practices Act.  Recovery was sought for 120 Missouri consumers purchasers of new Suzuki vehicles.  See *Missouri ex rel. Koster v. Am. Suzuki Motor Corp.*, No. 09-00519-CV-W-FJG, 2009 WL 3228778, at *1-2 (W.D. Mo. Sept. 30, 2009).

Similarly, the Illinois Attorney General recently sued SDS West Corporation, a company that provides debt settlement and mediation services, for alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act.  In addition to an injunction and civil penalties, Illinois sought restitution and rescission for the 250 Illinois consumers affected. See *SDS West Corp.*  640 F. Supp. 2d at 1051-52.

Both *American Suzuki Motor Corp.* and *SDS West Corp.* are examples of modest-scale, state-specific enforcement actions attorneys general routinely assert. Each was originally filed in state court, removed by defendants, and ultimately remanded back to state court.  *Am. Suzuki Motor Corp.*, 2009 WL 3228778, at *2; *SDS West Corp.*, *Illinois v. SDS West Corp.*  640 F. Supp. at 1049, 1053 (also

awarding Illinois costs and fees).  But these are exactly the types of enforcement actions that could be at risk for removal if federal courts begin looking beyond the face of attorneys general complaints and treating unnamed individuals as parties for diversity jurisdiction purposes.

States also bring lawsuits which create new state substantive law.  See *Rhode Island v. Lead Indus. Ass'n*, 951 A.2d 428 (R.I. 2008).  The development of state substantive law through the common law tradition of precedential judicial decisions should occur in state court.  This is implicitly recognized in the practice of federal courts certifying questions of state law to state courts.  See *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007) (noting that certification is appropriate if a state law question may determine outcome and "is sufficiently novel that we feel uncomfortable attempting to decide it without further guidance").  As this Court has recognized, there is a strong "judicial policy that matters of state law should first be decided by state courts."  *Delaney v. Cade*, 986 F.2d 387, 391 (10th Cir. 1993).

Nothing in CAFA indicates that Congress intended for quintessential state court issues to be decided in federal court.  Accordingly, this Court should guard against an overly expansive interpretation of either CAFA or the real party in interest doctrine that would lead to the unintended consequence of attorneys general enforcement actions being decided in federal court.  See *Franchise Tax Bd.*

*v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 22 (1983) (noting that "considerations of comity make us reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it").

## CONCLUSION

For the above reasons, the States support Oklahoma's position that the District Court's Order should be affirmed and that this case should be remanded to Oklahoma state court.

Respectfully submitted,

**OFFICE OF KANSAS ATTORNEY GENERAL
STEVE SIX**

**S/ *Kristafer R. Ailslieger*_____**
Kristafer R. Ailslieger (KS Bar #19626)
Deputy Solicitor General
120 SW 10th Avenue, Room 200
Topeka, Kansas 66612
Phone: (785) 296-2215
Fax: (785) 291-3875
kris.ailslieger@ksag.org


Lynette Bakker
Assistant Attorney General
Consumer Protection Division
120 SW 10th Avenue, Room 200
Topeka, Kansas 66612


**OFFICE OF OHIO ATTORNEY GENERAL
RICHARD CORDRAY**

Stephen P. Carney                    Jennifer L. Pratt
Deputy Solicitor                     Assistant Attorney General
150 E. Gay St., 23rd Floor           150 E. Gay St., 23rd Floor
Columbus, Ohio  43215                Columbus, Ohio  43215


Matthew T. Green
Assistant Attorney General
150 E. Gay St., 23rd Floor
Columbus, Ohio  43215

# CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)

**Section 1. Word count**

As required by Fed. R. App. P. 32(a)(7)(c), I certify that this brief is proportionally spaced and contains <u>6837</u> words.

I relied on my word processor, Microsoft Word 2007, to obtain the count.

I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

By:   **_S/ Kristafer R. Ailslieger_**
          Kristafer R. Ailslieger
          Deputy Solicitor General

## CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY REDACTIONS

I hereby certify that all required privacy redactions have been made in this pleading. Furthermore, I hereby certify that the foregoing brief submitted in digital form is an exact copy of the filed hard copies, and all documents and the accompanying exhibits were scanned for viruses with Trend Micro Office Scan, version 8.0, most recently updated on September 26, 2010, and, according to the program, were free of viruses.

**S/ *Kristafer R. Ailslieger***
Kristafer R. Ailslieger
Deputy Solicitor General

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed using the ECF system, furnished by electronic mail and U.S. mail to the following on this 27th day of September, 2010:

D. Kent Meyers
Miles Tolbert
Crowe & Dunlevy, PC
20 N. Broadway, Suite 1800
Oklahoma City, OK  73102
kent.myers@crowedunlevy.com
miles.tolbert@crowedunlevy.com

David J. Zott, P.C.
Andrew A. Kassof, P.C.
Kathleen A. Ehrhart
Matthew S. Buckley
Kirkland & Ellis LLP
300 N. LaSalle
Chicago, IL  60654
david.zott@kirkland.com
andrew.kassof@kirkland.com
kathleen.ehrhart@kirkland.com
matthew.buckley@kirkland.com

*Counsel for Appellants*

Thomas A. Bates
Jeremiah Streck
Assistant Attorneys General
For the State of Oklahoma
313 NE 21st Street
Oklahoma City, Oklahoma  73105-3498
Tom.Bates@oag.ok.gov

Henry A. Meyer, III
Meyer & Leonard, LLC
116 E. Sheridan, Suite 207
Oklahoma City, OK 73104
hameyer@meyerleonard.com

Brian Herrington
Barrett Law Group, P.A.
PO Box 927
Lexington, MS 39095
bherrington@barrettlawgroup.com

William A. Isaacson
Boies, Schiller & Flexner LLP
5301 Wisconsin Avenue NW
Washington DC 20015
wissacson@bsfllp.com

Carlos M. Sires
Boies, Schiller & Flexner LLP
401 East Las Olas Boulevard,
Suite 1200
Fort Lauderdale, FL 33301
csires@bsfllp.com

Jeffrey Millar
Brent Coon & Associates, PC
12201 Big Bend Road, Suite 200
Saint Louis, MO 63122
jim.kelly@bcoonlaw.com

*Counsel for Appellee*


**S/ *Kristafer R. Ailslieger***
Kristafer R. Ailslieger
Deputy Solicitor General